IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                Plaintiff,

vs.                                                      CIV-03-991 JC/WDS

PVNF, L.L.C., d/b/a Chuck Daggett Motors and
Big Valley Auto,

                Defendant.


**MEMORANDUM OPINION AND ORDER**

        THIS MATTER comes before the Court on *Defendant's Motion for Summary Judgment*, filed October 18, 2004 (*Doc. 50*). Having reviewed the Motion, the parties' submissions, and the relevant authority, the Court finds the Motion well-taken in part and it is, therefore, granted in part.

**I.    Background**

        The following facts are either undisputed or viewed in a light most favorable to the EEOC as non-moving party. This action arises from charges of gender discrimination filed with the EEOC by several of Defendant's former female employees. At this juncture, Marla Segovia and Joanne Richmond alone comprise the entire class of claimants.

        Prior to filing suit, the EEOC conducted an investigation of the allegations and concluded that there was reasonable cause to believe Defendant violated Title VII of the Civil Rights Act of 1964 by subjecting Ms. Segovia and a class of female employees to severe and pervasive harassment resulting in a hostile work environment and disparate treatment in the compensation, terms, and

privileges of the women's employment based on their female gender. The EEOC further found reasonable cause to believe that Ms. Segovia was retaliated against by Defendant for engaging in opposition to employment practices made unlawful by Title VII. Finally, the EEOC's investigation yielded reasonable cause to believe that, while Segovia's employment ended by her resignation, she was, in fact, constructively discharged as a result of engaging in opposition to pervasive discrimination based on her gender.

The claim on behalf of Ms. Richmond is limited to disparate treatment in eligibility for employee health insurance benefits based on her female gender. Additionally, the EEOC seeks to recover punitive damages on behalf of both claimants. The EEOC satisfied its statutory requirement to engage in conciliation efforts as prerequisite to filing this suit.[1]  Defendant presently moves the Court for summary judgment disposition in its favor on all claims.

## II.     Legal Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

---

[1]*See* Memorandum Opinion and Order, filed March 9, 2005 (*Doc. 93*).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

## III.  Discussion

As a preliminary matter, the Court finds the briefing and exhibits pertaining to this Motion excessive in the extreme. Notwithstanding some four-hundred pages filed by the parties, neither the material facts nor the attendant legal issues are markedly complex. The interests of efficiency and economy would have been better served by adherence to the page limits established by the Local Rules, for the Court had significant difficulty locating the information necessary to make its determinations.

### A.  Ms. Segovia

#### a. Gender Hostile Work Environment

Title VII forbids actions taken on the basis of sex that discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment. *Faragher v. Boca Raton*, 524 U. S. 775, 786 (1998) (citing 42 U. S. C. § 2000e-2( a)( 1)). Hostile work environment

3

harassment occurs when unwelcome sexual conduct "unreasonably interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment." *Smith v. Norwest Financial Acceptance, Inc.*,129 F. 3d 1408, 1412 (10th Cir.1997) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U. S. 57, 65 (1986)); 29 C. F. R. S 1604.11(a)( 3). *Meritor* states that "for sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the claimant's] employment and create an abusive working environment. 477 U. S. at 67. There is no "mathematically precise test" for determining whether conduct is sufficiently severe or pervasive." *Harris v. Forklift Sys., Inc*., 510 U. S. 17, 22 (1993).  Some factors to be weighed include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23. Moreover, the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact. *McCowan v. All Star Maintenance, Inc.*, 273 F. 3d 917, 923 (10th Cir. 2001).  In *Meritor*, the Supreme Court also stated that the existence of sexual harassment must be determined in light of the record as a whole, and the trier of fact must examine the totality of the circumstances, including the context in which the alleged incidents occurred. 477 U. S. at 69 (quoting 29 C. F. R. S 1604. 11( b)(1985)) (internal quotation marks omitted).  Thus, the Court must examine the totality of the circumstances in reviewing the summary judgment motion with regard to EEOC's hostile environment claims on behalf of Segovia. *Davis v. U.S. Postal Svc.*, 142 F.3d 1334, 1341 (10th Cir. 1998); *Smith*, 129 F.3d at 1413.

Defendant contends that Segovia's hostile work environment claim must fail for (1) lack of sufficient evidence to establish the necessary severity and pervasiveness, and (2) Defendant can

successfully assert the *Faragher-Ellerth* defense because it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and Segovia failed to utilize an anti-harassment policy Defendant had in place.  *Faragher v. City of Baca Raton*, 524 U.S. 775 91998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

The EEOC responds that viewing the evidence and totality of the circumstances most favorably to Segovia reveals a genuine issue of material fact as to the existence of a hostile work environment.  In that vein, the EEOC asserts that the conduct and comments of Defendant's majority owner, Alva Carter, and used car sales manager, Rodney Ennis, suffice.  Specifically, the EEOC alleges that Segovia was often referred to as a "bitch," was publicly "flipped off" by Ennis while simultaneously being told, "fuck you, bitch," was frequently exposed to Carter's sexist views of women as subordinate to men, and was regularly on the receiving end of sexually inappropriate comments to or about Segovia herself and women in general.  Segovia's sex life was also discussed publicly when it was suggested that Segovia's husband would get a good deal on the purchase of a new vehicle because he was sleeping with the manager, Segovia.  Further, the EEOC contends that Segovia received written disciplinary warnings for the same behavior exhibited by her male coworkers, who were not reprimanded.  Finally, the EEOC contends that a new pay structure was implemented in order to target Segovia for a pay reduction as a female sales manager while increasing the compensation of her male counterpart in used car sales.  In this way, the EEOC contends that the New Pay Plan had a discriminatory purpose and effect.

Defendant argues that the instances cited by the EEOC do not rise to the level of pervasiveness necessary to constitute actionable discrimination based on a hostile work environment.  Defendant further contends that the legitimate purpose of the new pay structure was its attempt to

resolve the long-standing, heated conflict between Segovia as new car sales manager and Ennis as used car sales manager. Segovia and Ennis undisputedly had frequent, heated disagreements about values assigned to trade-in vehicles. In particular, a high trade-in value helped Segovia sell a new vehicle and make a profit; conversely, the higher the trade-in value Segovia assigned a given vehicle, the more difficult for Ennis to sell that pre-owned vehicle at a desirable profit.

Though the root of the car value conflicts between Ennis and Segovia are inherently of a business nature, likely to arise between coworkers regardless of gender, that fact is not dispositive. The question is whether Ennis' venting his aggression about the trade-in value conflict by publicly attacking Segovia and repeatedly calling her a "bitch" and saying "fuck you" contributed to a hostile work environment, and a reasonable jury could find that it did. After the confrontation in which Ennis said "fuck you, bitch," Segovia was crying and unable to return to work. Additionally, the existence of the e-mail created by Ennis and sent to one of Segovia's subordinates referring to Segovia's "nasty crotch," while not intended to be read by Segovia, could support an inference that hostility toward females was pervasive in the workplace insofar as it tends to indicate a general attitude, at least on the part of Ennis, that commenting on women's genitals was appropriate or at least acceptable, which it is not.

In sum, the Court finds that the totality of the circumstances here implicates questions of material fact squarely within the province of the jury as to whether the work environment was objectively and subjectively hostile. The Court further finds that a reasonable jury could conclude, given the totality of the circumstances, that Segovia was subjected to a hostile work environment. Thus, summary judgment disposition is inappropriate on this claim.

    b. <u>Gender Disparate Treatment</u>

*Ms. Segovia*

The familiar three-stage *McDonnell Douglas* burden-shifting analysis applies to claims of discrimination where, as here, no direct evidence of discrimination exists. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1201, 1315-16 (10th Cir. 1999). First, a plaintiff must prove a prima facie case of discrimination. The first two elements of Segovia's prima facie case are met, for (1) she is undisputedly in a protected class as a woman; and (2) she was undisputedly qualified for the position she held. The third element is disputed, that being whether Segovia suffered adverse employment action, particularly in light of the fact that she resigned her employment.

Defendant contends that Segovia's disparate treatment claim should fail for insufficient evidence to form a prima facie case of discrimination and, even if Segovia has marshaled such evidence, Defendant has offered non-discriminatory reasons for the employment actions taken, namely resolution of the ongoing trade-in value conflict, and the EEOC cannot establish that such reasons are mere pretext for intentional discrimination. In support of its position, Defendant points out that the New Pay Plan applied equally to Segovia, a female, as to Ennis, a male. Further, the pay structure continued to apply after Segovia left the dealership, and her replacement was a male to whom the pay structure also applied, at least for some time. Defendant also contends that the written warnings came as a result of numerous complaints that Segovia was either unavailable or talking on the phone instead of doing her job.

The EEOC contends that the proffered reason for the New Pay Plan is mere pretext for intentional discrimination against her as a female insofar as the New Pay Plan would result in a reduction in Segovia's compensation for the same amount of work she had been doing in the past. Conversely, argues the EEOC, Ennis stood to receive increased compensation for the same work he

had been performing as a result of the New Pay Plan. The EEOC also notes that the New Pay Plan came directly on the heels of Segovia's argument with Ennis during which Ennis said, "fuck you, bitch."

The Court finds that the EEOC has sufficient evidence to make a prima facie case under the *MacDonnell Douglas* analysis and that sufficient evidence exists from which a reasonable jury could find Defendant's justification pretextual. Thus, summary judgment disposition is not proper on this claim.

### *Ms. Richmond*

The sole claim on behalf of Ms. Richmond is that she was not offered health insurance benefits as were some male coworkers in comparable positions to the one Richmond held. With regard to Title VII equal pay claims, a plaintiff makes a prima facie case of discrimination by showing that she occupies a job similar to that of higher paid males. *Sprague v. Thorn Americans, Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997). If the Plaintiff satisfies her burden and makes a prima facie showing, the burden shifts to the defendant to produce a facially legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's proffered reason for the action is mere pretext for intentional discrimination. *Id.*

It is clear that being given less generous benefits than male employees in similar positions is adverse employment action. *Sprague v. Thorn Americans, Inc.*, 129 F.3d 1355, 1363 (10th Cir. 199). The EEOC alleges on behalf of Ms. Richmond that a prima facie case is established in that (1) Richmond is female; (2) while in Defendant's employ, Richmond received different and less fringe benefits than similarly situated males insofar as she was not offered health insurance benefits; and (3)

8

the similarly situated males were treated differently in that they were offered health insurance benefits.

Defendant contends that employee health insurance benefits for its managers were negotiated on an individual basis, without regard to gender, and that Richmond did not request any health insurance or call any perceived discrepancy to the attention of Ms. Franson. Additionally, Defendant contends that Richmond did not file a charge of discrimination with the EEOC and Richmond's claim falls outside the scope of the charges filed by Segovia and is not properly before the Court.

The Court finds no evidence that Defendant's proffered justification for the discrepancy in insurance premium payments is mere pretext for intentional discrimination. Thus, there is no genuine issue of material fact in need of resolution on Richmond's claim, which is dismissed as a matter of law.

    c. Gender Retaliation

Defendant seeks summary judgment on Segovia's retaliation claim, arguing that the EEOC cannot show protected activity, adverse action, or causal connection. On three separate occasions Segovia complained to Chuck Daggett about (1) the derogatory e-mail referring to Segovia's genitalia as her "nasty crotch," sent from Ennis to salesman Smith and discovered by Segovia only when Segovia clandestinely logged onto a computer and entered a password not assigned to her; (2) statements Carter had made about not wanting Segovia to hire female sales persons; and (3) Segovia's receiving a disciplinary write-up for being unavailable and late to work. Segovia also complained to Carter about the aforementioned e-mail. Resp. at 20.[2] The EEOC contends that in

---

[2] The Court determines that Carter, as majority owner of the company, was a proper person with whom to lodge her complaints. Carter is also alleged to have been a primary contributor to the hostile environment. Taking these two facts together, Carter may be considered alter-ego and availability of the *Faragher* defense asserted by Defendants is placed in question. Summary judgment, thus, is not appropriate at this juncture. Reluctantly, the Court

retaliation for these complaints, Segovia suffered adverse employment action in the form of the written disciplinary Employee Warning Notice and the New Pay Plan. Resp. at 21. Further, it appears to be the EEOC's position that despite Segovia resigning from her employment at the dealership, the circumstances of her employment and discrimination in the workplace indicate that such resignation was, in fact, a constructive discharge.

Defendant asserts that Segovia's claim for retaliation should fail as matter of law for lack of evidence that Segovia engaged in any protected conduct, and even if she did, there exists no causal link between the adverse employment action and the protected activity.

The Tenth Circuit liberally defines "adverse employment action." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998). Ultimately, action is "adverse employment action" if it constitutes a significant change in the employment status such as, but not limited to, hiring, firing, failing to promote, reassignment with significantly different responsibilities, *or a decision causing a significant change in benefits*. *Id.* (emphasis added). The guiding principal in the Court's case-by-case analysis is that an adverse employment action is one that alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affects her status as en employee. *Heno v. Spring/United Mgmt.*, 208 F.3d 847, 857 910th Cir. 2000). The Court finds on the facts of this case, a reasonable jury could find that Segovia was retaliated against because of her opposition to workplace discrimination. Thus, summary judgment is not proper on this claim.

## IV.    Conclusion

WHEREFORE,

---

will entertain additional briefing on the issue. Such briefing will be succinct and in conformance with all Local Rules.

**IT IS ORDERED** that *Defendant's Motion for Summary Judgment*, filed October 18, 2004 (*Doc. 50*) is GRANTED on the sole claim brought on behalf of Ms. Richmond and DENIED as to all claims brought on behalf of Ms. Segovia.

Dated this 17th day of March, 2003.

                                                                                           _____
                                                                                           SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Loretta Medina, Esq.
    Veronica A. Molina, Esq.
    Equal Employment Opportunity Commission
    Albuquerque, New Mexico

    Mary Jo O'Neill, Esq.
    C. Emanuel Smith, Esq.
    Equal Employment Opportunity Commission
    Phoenix, Arizona

Counsel for Defendant:

    Linda G. Hemphill, Esq.
    Stephanie Fuchs, Esq.
    Linda G. Hemphill, P.C.
    Santa Fe, New Mexico