**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

vs. CIV-03-991 JC/WDS

PVNF, L.L.C., d/b/a Chuck Daggett Motors and Big Valley Auto,

Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on *Plaintiff's Motion to Amend the Court's Findings of Fact and Conclusions of Law and Final Judgment and Motion for a New Trial*, filed July 14, 2005 (*Doc. 137*). The Court, having reviewed the Motion, the parties' submissions, the relevant authority, and the record, finds the Motion not well-taken and it is, therefore, DENIED.

## I. Background

This matter came on for jury trial May 5, 2005 through May 9, 2005. On May 9, at the close of Plaintiff's case-in-chief, Defendant moved the Court for judgment as a matter of law on all claims asserted by Plaintiff pursuant to FED.R.CIV.P 50. Following oral argument, the Court granted Defendant's motion. On June 30, 2005, the Court entered (1) Findings of Fact and Conclusions of Law (*Doc. 135*) ("Findings and Conclusions") in support of its May 9, 2005 oral ruling; and (2) Final Judgment (*Doc. 136*) ("Judgment") in favor of Defendant and against Plaintiff on all claims with

prejudice. On July 14, 2005, Plaintiff filed the present Motion seeking amendment to the Court's Findings and Conclusions pursuant to FED.R.CIV.P. 52(b) or, in the alternative, requesting a new trial pursuant to FED.R.CIV.P. 59(a).

## II. Legal Standard

Proper grounds for a Rule 52(b) motion to amend include newly discovered evidence, a change in the law, or a manifest error of fact or law. *See, e.g., Foutenot v. Mesa Petroleum Co.*, 791 F.2d 1207 (5th Cir. 1986). Rule 59(a) states in pertinent part: "[a] new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law . . . ." FED. R. CIV. P. 59(a). The Tenth Circuit has stated that a motion for a new trial is not regarded with favor and should only be granted with great caution. *United States v. Kelly*, 929 F. 2d 582, 586 (10th Cir. 1991). The decision to grant a motion for a new trial is committed to the trial court's sound discretion. *McDonough Power Equip., Inc. v. Greenwood*, 464 U. S. 548, 556 (1984). In reviewing a motion for a new trial, the Court must view the evidence in the light most favorable to the non-moving party. *See Griffin v. Strong*, 983 F. 2d 1544, 1546 (10th Cir. 1993).

## III. Discussion

### *A. Timing of Motion*

As a preliminary matter, Defendant contends that the Court lacks jurisdiction to entertain Plaintiff's Motion because it was untimely filed. Proper application of FED.R.CIV.P. 6, however, confirms Plaintiff filed within the ten-day period following entry of the Findings and Conclusions and Final Judgment. Thus, Plaintiff's Motion is timely.

### *B. Objections*

Rule 50(a)(1) permits a district court to grant a motion for judgment as a matter of law "if during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue. . . ." *FDIC v. Palermo*, 815 F.2d 1329, 1335 (10th Cir. 1987); *see also Bangert Bros. Constr. Co. v. Kiewit Western Co.*, 310 F.3d 1278, 1286 (10th Cir. 2002).

1. Findings

None of Plaintiff's objections to the Court's Findings and Conclusions is persuasive. As discussed below, the objections are either unsupported by law, challenge the Court's word choice in what can only be described as a frivolous manner, impermissibly seek to relitigate old issues, or are otherwise unavailing.

First, Plaintiff challenges Findings Nos. 2 and 3 as irrelevant under FED.R.EVID. 401, in effect seeking to relitigate its prior motion requesting exclusion of evidence. The Court, upon review, declines to disturb its prior evidentiary rulings. Regarding Plaintiff's more particular objection to Finding No. 2, which finding notes that Segovia signed and understood a "No Harassment Policy/Procedure" pursuant to which Teague-Strebeck employees were instructed to make complaints of harassment known to their supervisor and beyond, the Court has reviewed Segovia's testimony. At trial, Segovia testified to her belief that, absent any indication otherwise, all business continued as it had under Teague-Strebeck Motors. Segovia Dep. at 87:25-29; Tr. at p. 400 ll. 9-17. *But see* Tr. p. 399, ll. 9-15. Thus, even viewed in the light most favorable to Plaintiff, the facts establish Segovia's own belief that the policy remained in effect through the succession. Yet Plaintiff did not properly avail herself of those procedures as she understood them to be.

Plaintiff next argues that Finding of Fact No. 3 erroneously "suggests that Ms. Segovia was

on probation since receipt of a January 1997 'Employee Warning Notice.'" Pl's Mem. at 2. The Court did not intend to make such a suggestion, but instead aimed only to note that Segovia had, on at least one occasion, been issued a warning by Defendant's predecessor, Teague-Strebeck Motors. Such evidence is relevant because Plaintiff placed her own employment record in issue by challenging the disciplinary action taken against her as compared to action taken--or not taken--against her male coworkers and by introducing evidence regarding her overall employment history. Plaintiff's next challenge involves Findings Nos. 11-15. Plaintiff challenges Finding No. 13 on the ground that it erroneously concludes Segovia walked away from the referenced conversation "in response to Ennis' inappropriate, offensive remark and gesture" when instead, Plaintiff asserts, Segovia "started to cry and *started to turn and walk off*" but actually walked off shortly thereafter. Pl's Mem. at 4. The distinction is noted, but of little significance. It is undisputed that Plaintiff relies heavily on having walked away from that heated conversation as evidence that she complained about sexual harassment and discrimination. *See, e.g.,* Mot. at 4,18. In that vein, Segovia testified as follows: "I felt like me walking away from a heated conversation was a complaint to Mr. Carter that I didn't want--I didn't want to be treated like that. I felt like that was a complaint." Tr. at p. 319 ll. 25-28; p. 320. The problems with Plaintiff's theory are two-fold. First, Carter cannot be required to understand or act upon something Segovia felt but never expressed with words. Second, even if Carter understood that by walking away she was asserting that she "didn't want to be treated like that," there is no evidence in that scenario that Ennis' treatment of Segovia was based on her gender. Presumably, Plaintiff relies on the word "bitch" in Ennis' comment to establish a gender link. Yet, by Plaintiff's own argument, significant time elapsed and much discussion took place between the word "bitch" being uttered by Ennis and Segovia walking away. How then is Carter to infer that

Segovia was complaining to him about gender harassment? Moreover, it is undisputed that Segovia never complained to Daggett about Ennis' remark and gesture. In light of all evidence, the Court determines that the distinction Plaintiff makes in its objection to Finding No. 13, though perhaps technically accurate, is without consequence. Timing and semantics aside, Segovia's actions do not constitute an informal opposition to gender-based harassment to assist Plaintiff in meeting its burden of proof at trial and Plaintiff provides no authority establishing otherwise.

Plaintiff also accuses the Court of mischaracterizing Segovia's comment to Ennis that he "go home and go to bed," as "snide" when in fact Ennis described it as "sarcastic." Mot. at 4. Here, the Court will note only that, given the attendant circumstances, Segovia's comment would universally be perceived as offensive. The evidence at trial unequivocally established that Mr. Ennis made his inappropriate comment and gesture in response to Segovia's sarcastic remark to him. This remains true whether Segovia's comment is referred to as "sarcastic" or "snide." In sum, the Court finds Plaintiff's objections to Finding No. 13 unavailing at best.

Regarding Finding No. 14, Plaintiff asserts that it is "erroneous as it concludes that Alva Carter told Ms. Segovia she 'should' stay in the conversation. Actually Alva Carter *ordered* Ms. Segovia to stay." Mot. at 4 (citing Tr., pp. 150-151 and 318) (emphasis added). Perhaps this is Plaintiff's attempt at a play on words. In its pursuit of accuracy, the Court has reviewed the transcript only to find no witness ever used the word "ordered" in describing Carter's direction to Segovia. Instead, Mr. Ennis stated "Alva *told* her to come back." Tr. p. 150:22-23. There is nothing erroneous about the Court's use of the word "should" in this context. Plaintiff merely makes a frivolous challenge.

Similarly frivolous and unavailing are Plaintiff's objections to Findings of Fact Nos. 11-15.

Here, Plaintiff denies that the evidence established an inherent conflict between Ennis and Segovia based on the nature of their respective compensation arrangements. This argument gives the Court great pause and concern, for it is beyond all reasonable contention that a conflict of that exact nature existed. Notwithstanding unrebutted testimony establishing the nature of the conflict, Plaintiff postulates that the admitted conflict between Ennis and Segovia could instead be attributed to Ennis "not liking that a woman had the potential to make and did make more money than him." Pl's Mem. at 3. Yet no sufficient factual basis exists to support Plaintiff's hypothesis. All evidence introduced at trial leads to the same conclusion--Segovia and Ennis were in direct competition with one another by virtue of the jobs they held and the associated pay plans which pitted the new car and used car sales managers against one another. ("Chuck liked to have steak and beans contests, used cars against new cars...I think [Chuck] thought if he put us in a competitive type of thing, it would generate this competitiveness and sales would flourish and boom." Tr. at p. 155 ll 15-19); ("[w]e were paid off the profit margin. It's called gross. If I say 'gross,' that means profit in cars. And I got paid off the used cars and Marla got paid off new cars." Tr. p. 153 ll 19-22.) Specifically, as New Car Manager, Segovia benefitted financially from high trade-in values assigned to pre-owned vehicles which facilitated a new car sale from which Segovia was compensated. As Used Car Manager, Ennis, on the other hand, stood to reap higher compensation from lower trade-in values assigned to pre-owned vehicles because lower values enabled him to sell vehicles on his used lot more readily and for a higher profit. It was this inherent conflict, and the need for resolution thereof, that Segovia herself readily identified when she commented that the competition was down the street, not across the street. There was virtually no evidence at trial establishing that the conflict arose because Ennis believed a woman should not make more money than him. To the contrary, Ennis stated, "I

didn't complain that Marla [Segovia] made more money than me to Chuck; I just complained about the pay plan." Tr. at p. 156 ll. 17-19. This statement was unrefuted. When objecting to Finding No. 17 as against the weight of the evidence, Plaintiff states that such finding "can only have been made if the Court made a credibility determination that should have been left to the jury." Mot. at 5. The testimony at trial established, however, that the discussion took place and its content is accurately represented in Finding No. 17. This objection can only be described as frivolous.

Finally, the Court addresses Plaintiff's disturbing mischaracterization of the evidence when stating that Ms. Segovia "received" a derogatory e-mail. Reply at 6 (stating that Segovia took the day off "after receipt of the derogatory e-mail...."). That mail was, in fact, sent from Smith to Ennis, forwarded by Ennis to Daggett, and *intercepted* by Segovia. Because Plaintiff has chosen to take issue with word choice at every opportunity, the Court is compelled to address this issue in detail. The undisputed evidence established that Segovia entered the password-protected electronic mail account belonging to her boss, without his knowledge or permission, and read his mail. Segovia's response to reading the e-mail was to take a day off and author her own distasteful e-mail to Daggett, explaining that she would be absent from work because she was shopping for clothing to cover her "so-called balls." Apparently, EEOC considers this to be a complaint for purposes of Title VII litigation.

Moreover, the means by which Segovia discovered the e-mail did not render it inadmissible, though the fact that it was not intended to be seen by Segovia limits its evidentiary value *vis-a-vis* most of Segovia's claims. Plaintiff apparently recognizes this weakness, finding it necessary to mischaracterize the e-mail as having been "received" by Segovia. Reply at 6. Given the way Segovia discovered the private mail, the only claim its contents might support is hostile work environment,

insofar as the email could be indicative of a prevailing climate at the dealership.[1] Its author, Smith, was in no position to take retaliatory action or discriminate against Segovia, nor was the intended recipient, Ennis. Further, no evidence of discrimination or harassment of Segovia can be inferred from mail between she was never intended to see. Moreover, no meaning can be attributed to Daggett's purported inaction on the e-mail initially, for it was intercepted by Plaintiff before he even read it. Finally, the testimony at trial established that when Daggett became aware of the e-mail, he verbally reprimanded both Ennis and Smith and directed both men to apologize to Plaintiff. Plaintiff was not reprimanded for the distasteful e-mail she sent her boss in response.

2. Conclusions

Plaintiff challenges Conclusions of Law Nos. 1, 2, 3, 4, 5, 6, 7, 8, and 9--every Conclusion the Court reached. The Court will expound only upon Plaintiff's objection to Conclusion No. 8, as it bears on the Court's analysis elsewhere. The Court articulated in No. 8 that Plaintiff's admitted desire to return to work at Defendant dealership, an employer that was allegedly discriminatory, harassed her, retaliated against her, and provided a hostile work environment for her, negates her contention that the workplace was intolerable. The Court stands by that Conclusion, notwithstanding Plaintiff's contention that it "is a conclusion of fact not supported by the evidence and is not a correct conclusion of law." Mot. at 19. Plaintiff apparently believes that by characterizing her claims as arising only during the time she served as New Car Manager, she can establish that it was

---

[1]Incidentally, if the Court were to improperly assess witness credibility as accused, which it has not, it might, for instance, find the characterization of Segovia's skirt in the private e-mail as being short more credible than her testimony that it was not. It is unlikely that Smith would mischaracterize the length of Segovia's skirt when both men were present at the dealership, as was Segovia, and the length of the skirt was verifiable. This is not to suggest, however, that commenting on skirt length is proper or the e-mail not vulgar.

"reasonable" to seek re-employment at the dealership in some other capacity following her resignation. *Id.* Yet by posturing the allegedly intolerable conditions as associated solely with being a woman in the New Car Manager position, the testimony of Segovia's former coworkers is then of little or no assistance to Plaintiff on her claims, for none of them occupied the New Car Manager position or one equivalent thereto. Moreover, though not included in its Findings and Conclusions, the Court takes the opportunity to note for the record that Segovia admittedly told her coworker, Chris Wood, that she quit her job because of "PMS."[2]

## IV. Conclusion

In summary, after careful review, it is without reservation that the Court reiterates its conclusion that Plaintiff failed to meet its burden of proof at trial on its claims alleging discrimination, harassment, retaliation, or hostile work environment. Plaintiff's sweeping objections amount to much sound and fury signifying little. Finding insufficient grounds to alter its Findings of Fact and Conclusions of Law or to grant a new trial in this matter, the Court denies Plaintiff's Motion.

Wherefore,

**IT IS ORDERED** that *Plaintiff's Motion to Amend the Court's Findings of Fact and Conclusions of Law and Final Judgment and Motion for a New Trial*, filed July 14, 2005 (*Doc. 137*) is DENIED.

Dated November 2, 2005.

**SENIOR UNITED STATES DISTRICT JUDGE**

[2]There was testimony that Segovia actually said "fucking PMS" caused her to quit her job, while Segovia testified that she did not say "fucking" but said only that she was "suffering from PMS" on the day she resigned. Semantics.

Counsel for Plaintiff:

    Loretta Medina, Esq.
    Veronica A. Molina, Esq.
    Equal Employment Opportunity Commission
    Albuquerque, New Mexico

    Mary Jo O'Neill, Esq.
    C. Emanuel Smith, Esq.
    Equal Employment Opportunity Commission
    Phoenix, Arizona

Counsel for Defendant:

    Linda G. Hemphill, Esq.
    Stephanie Fuchs, Esq.
    Linda G. Hemphill, P.C.
    Santa Fe, New Mexico